Good morning. May it please the court, and I hope that it does. My name is Terrence Kellogg. I represent Oliver King. Both Mr. Morgan and I, counsel for the government, were surprised that we were granted 15 minutes aside. Both of us, when reminded that we don't need to take all of that time, said that we didn't need that long. But once we get going, you know how it is. I wish to reserve five minutes. And I'm appreciative of the court granting oral argument in this case. I would like to focus on count one, the conviction for dealing in firearms without a firearms license. I think that it's remarkable how much agreement there is between the government and Mr. King and myself on behalf of Mr. King as to what the law is that's applicable to all of the issues that have been raised, and in large part what the facts are underlying this appeal and Mr. King's convictions. The difference comes in what are the inferences? What are we told by those facts? And it's particularly compelling when considering the efficacy of the jury's verdict of guilt as to this first count. And I think that a good starting point would be the standard of review. We all, and by we I mean the government and the defense, agree that the proper standard of review, since there was no motion for a judgment of acquittal, there was no request for dismissal at the conclusion of the government's case by trial counsel, the appropriate standard of review is one of plain error as discussed in the Ninth Circuit's Neville case. As cited in Flyer, which again is in the government's brief, as I think in our brief as well, the difference between plain error and error that has been preserved at the trial court level for purposes of evaluating a sufficiency of the evidence argument is really not that difference. In Flyer, the court characterized the distinction as being only theoretically more stringent than the standard for a preserved claim. And the reasoning was that if you have error that is plain, then it necessarily affects substantial rights and seriously affects the fairness, integrity, or public reputation of judicial proceedings. Well, not always, but why don't you get to what you think the error was first, and then we can circle back on whether the standard of review makes a difference. I think that the error was that the jury returned a verdict of guilty on the paucity of evidence that was provided by the government. And I say that in addressing the evidence because, really, what the definitions under 18 United States Code 922A1A require for a conviction is that somebody was engaged in the business of dealing in firearms. Mr. King, albeit the jury convicted him of that, was not. The facts of this case are unique, not complex, not voluminous, but unique, in that Mr. King was a consultant to Mr. Zirondi in the establishment of McMinnville Huntington Police Supply. There were a total of 24 firearms purchased by that business entity during the course of its existence in corporate guise. Mr. Zirondi was the responsible party under the federal firearms license. Of the 24 firearms which were purchased, one was sold by Zirondi. Twenty-one were seized from Mr. King at his storage unit near the border at the time of his arrest, and there were two that are unaccounted for. The government argues that the inference is that they were sold. Well, you had asked for a jury instruction to support your agency theory of the defense. Do you have a case that supports the notion that that sort of theory is available in the law, or are you relying on statutory interpretation? I'd have to say statutory interpretation under the unique facts of this case because it was a blend. Mr. King, as the parties acknowledged, was an authorized agent for Zirondi in the first instance. He was acting as a consultant. He had numerous exchanges with ATF as far as qualifying for a license. He exchanged emails with ATF as to, as a Canadian citizen, what he could do, and he was advised that if he was dealing himself, he would be held accountable under 18. Right. So there was evidence that he offered guns for sale. You disputed that, but we draw the inferences in favor of the prosecution at this stage after a jury trial. So assuming that we draw those inferences that he was offering guns for sale personally, isn't that sufficient evidence to support the verdict? Your Honor, it would be if he in fact was offering guns for sale, but he was not. So tell me why it's not subject to the government's argument that there was an inference that he was offering guns for sale. Because the evidence shows that he in fact was not. The government had two individuals, Porter and Dr. Stewart, the chiropractor. Porter testified that he thought that he was going to be gifted a gun, a .44 Magnum, by King, and King's appreciation of Mr. Porter having received packages from UPS and stored them in their little unoccupied, seldom-visited office in McMinnville, Oregon. The chiropractor, Dr. Stewart, never purchased a gun, was told that he was shown a Glock by Mr. King, who said it was for sale. The statute and the definitions of the statute permit occasional sales to liquidate or enhance one's collection, as long as it doesn't fit that business purpose, to gain profit, to have a livelihood. I mean, considering the evidence in the light most favorable to the government, you've sort of sanitized the proof here. I mean, this man was, considering the evidence in the government's favor, a fraud. He was defrauding his business partner. He was up to sort of hanky-panky, moving these weapons and other machineries to the warehouse under cover of darkness. Was that to further his hobby? I mean, the evidence is rather strong, is it not, that he intended to sort of double-deal his business partner and sell these weapons for profit? Well, I respectfully disagree, particularly with the second part of what Your Honor said, in that there's no indication that he ever tried to sell anything. The fact that he may have been a fraud, may have been double-dealing Zirondi, his business partner, may have done all kinds of horrible things, does not prove that he was guilty of dealing in firearms as a course of business with the intention to make profit. There is evidence in the record that he made a general offer, if you're interested in firearms, I can get you at very good wholesale prices. What is that, if that's not doing business, dealing business in firearms? My recollection in the record was not that he made that general offer to anyone. He might have said, I could help you out at good prices. And at the time, he's still in business with Zirondi, who was the responsible party. I think the strongest- I understand, but the jury rejected all of that. Well, Your Honor, I think that the jury rejected it, in part because the requested agency instruction was not given by the district court, in part because of the prejudice that flowed from count two, which is not before the court at this time, the fact that it was dismissed by agreement between the parties was the basis for our request for a new trial. There was a declaration from trial counsel on behalf of King as to the overwhelming prejudice. This is a man who's indicted under the name Hamid Malikpour, and an abundance of testimony as to his Canadian passport found in that name, his travels to Iran, his questioning at the border about his numerous travels. Again, and that ties into the materiality of the purported false statements that King gave at the border. It's somewhat analogous to what Your Honor was saying about Mr. King being a fraud and a bad person and double-dealing his business partner. The government made the argument that if King was getting particularly the style of firearms without paying Zarandi, he was guilty of felony theft, much what I think is the basis for Your Honor's comment that he was... So he was forging Zarandi's name and utilizing the license that was issued to Zarandi  So I think the inferences are there, and it has to be drawn in the government's favor. But let me clarify the scope of your arguments, particularly in the court below, because on the one hand, you vigorously dispute the fact that he was dealing in firearms by characterizing his behavior as hobbyist behavior. But on the other hand, you also ask for the agency instruction. So was your argument in the court below an alternative theory that he was not dealing in firearms, but to the extent that he was dealing in firearms, he was acting as an agent for Zarandi? If I might go back to one of the first things, then I will more directly answer your question, Your Honor. I don't think that the fact that King obtained a large number of firearms meant that he was going to sell them, because he had them, he held them, he stored them. They were taken from him. But what do you do with the Potter testimony, the chiropractor? Here's what he says. What was the nature of the business? I asked him if he was the gun dealer, because I heard one had moved in the building, and he said yes. Then it goes on to say, we are interested in purchasing firearms. And he goes on to say, yes, he was interested in purchasing firearms, and Mr. King indicated he could get you that gun, yes. Well, I think that that's tied into the agency, because King and Zarandi are unified. If your agency theory, though, is correct, why doesn't that just emasculate the statute on the principal? I mean, the firearms, if that were so, then anybody could be licensed to sell as an agent. There would be no federal regulation over the principal who's selling the firearms, who has the license. And I think you said earlier he was not licensed to sell. He couldn't sell. And he didn't sell. And he was not licensed. I don't understand your, in context of what we've just been talking about, what your argument is then. You're saying he was selling as an agent, and that's okay. And then you said he wasn't selling. Well, that's what I was trying to explore. Were you kind of arguing the alternative? No, I think it's a unified theory, because he's more like an employee rather than an agent at that time. Under the Federal Firearms License, you have a responsible party, which in this case was Zarandi. Usually in a typical gun store, you have one licensee, the responsible party, and you have numerous employees. They're agents. They engage in an agent and an employee. Well, I submit the analogy would hold up, and that the problem that we have and why this case is different than the case that's cited by both parties about the convicted felon who incorporated and applied for and got a license as a corporate entity, clearly agency would not excuse his conduct because he was otherwise a person not qualified to have a Federal Firearms License. But in this instance, we have Mr. King, who is particularly initially working closely with Zarandi in helping Zarandi establish and build this business. So I think that the statements with Stewart fall into what I characterize as a unified defense theory of agency, why it was important to be able to argue to the jury that the one instance where Mr. King offered Dr. Seward a Glock at Seward's request, it was on behalf of... He didn't say that. Seward says, I asked him if he was the gun dealer because I heard one had moved into the building, and he said yes. That's his testimony. Well, as Judge Robart reminded me just 10 days ago, everybody knows that Mr. King is a liar. It could have been puffing, Your Honor. Right, but here we are. I agree with you, good jury argument. Here we are drawing inferences in favor of the government standard of review. Isn't that enough? Well, I think that when you look at the definitions of the statute, what is required is more than an isolated instance of holding yourself out as a gun dealer and attempting to make a sale which does not happen over a period of time. The statute punishes somebody who is engaged in the business of dealing in firearms or acting with the intention over a concerted period of time to not only make profit, but to establish that business for a livelihood. And that is why the evidence we submit was insufficient. That's why we believe it was the product of prejudice flowing from count two, which has been dismissed. We submit that the fact that there was a change in the law is new evidence. That's a different issue, I know, as fully addressed in the briefs. And the fact that King was under surveillance by Homeland Security at the border for at least 14, 15 months before he was arrested and many months before he started making false statements, make any statements that he made under the context of the ICE agents that were alerted because of the computer notations on Mr. King any time he presented at the border immaterial. Your time is almost up. Thank you for your argument. Good morning, Your Honors. May it please the Court. My name is Michael Morgan. I represent the United States in this appeal. With respect to count one, the only question is whether there is any rational line of inferences that could support the jury's finding that Mr. King engaged in the business of dealing with firearms because that term is statutorily defined. The answer is unquestionably yes. First, just the nature of the firearms and the firearm purchases supports the inference that they were being acquired for resale. And Mr. King acquired multiple copies of the same weapon. A collector doesn't collect multiple copies of the same thing. He's also buying some of these weapons on credit. And the testimony of trial is actually for a net 270 days. When you buy weapons on credit, the whole purpose is for that time frame is that you're going to turn around and resell them. Again, the jury can look at that and infer that, yes, he's holding himself out as a dealer. And as Judge Thomas pointed out, perhaps the best evidence came from the mouth of Mr. King himself. He held himself out as a dealer. He brought Mr. Seward into the office that he had leased. He showed him a gun that he had purchased. It was one of the RSR Glocks that he had purchased and offered to sell it to him. That is not someone who is offering to sell a random gun that is in his personal collection. This is a man holding himself out as a dealer who is offering to sell a firearm at retail. So did you ever prove that he sold a gun? There's no proof in this record that he ever sold a gun. That is correct. So that's a problem, isn't it? Well, as I think the statute makes clear, you have to intend to profit. You don't actually have to profit. And I think as we put it in our brief, you don't have to be a successful firearms dealer. The fact that Mr. King- He had no success at all. That is true. He had no success at all. But that doesn't mean that he didn't meet the definition of a dealer. He invoted time and labor to setting up an enterprise of selling guns at retail. That's firearms dealing. Whether or not you actually succeed in- Even one sale. Mr. Stewart apparently didn't have the money on him at the time. The argument is he wanted to succeed. He definitely wanted to succeed. This is true. Now, there's ample evidence that Mr. Zarandi was working with the defendant, at least in the beginning in setting up the corporation, and that the initial purchase actually was done together, even though I think the funding came from Mr. King's- somebody advanced the money, whether it was Mr. King or his girlfriend, actually advanced the money. So given the fact that there was some activities in concert, what the defense wanted was to argue that he was acting within the scope of that agreement, the agency relationship between himself and Mr. Zarandi. Now, of course, you have to come back that he's not an authorized agent because he went beyond what Zarandi wanted. So I take it then that your fallback is that even if there's some evidentiary support in the record, as a matter of law, the agency defense just isn't available? That is correct. Because if you're-and I should back up-if you're an agent and your agency amounts to dealing in firearms, you're a firearms dealer, and you have to be licensed. You can't incorporate, have a principle, a straw principle, and then just delegate all of your authority to an unlicensed individual who's then going to carry out the business. Now, if your agency activities don't rise to that level, take, for example, just the employee shop clerk, who is just-all they do is they just process the sales. They have no role in acquiring the inventory and managing the business or controlling the business. That person would, under the law, technically be an agent, but their activities wouldn't rise to the level, wouldn't meet the definition of a dealer because they're not engaged in the business of dealing in firearms. So there you have a defense. It's not really an agency defense. It's not that I'm acting as an agent and therefore I'm immunized. It's that I'm acting as an agent and my agency doesn't rise to the level of dealing. If Mr. King could have mounted that defense, and it's arguable that had his conduct stopped at the acquisition of the license, had he done nothing else to deal with, you know, getting the weapons, then he would have had sort of an agency defense. But his agency went far beyond that.  I mean, there's just no dispute in this record that an authorized agent doesn't forge his principal's signatures and make purchases that his principal is unaware of. That's just not an agent. So on the facts, there's just simply not a factual basis for the instruction, and on the law there simply is no legal basis for the agency theory that Mr. King wanted to present. How do you define, then, the line between the employee and the agent? How would we articulate that? Well, Your Honor, I think that comes from the definition of what it means to be engaged in the business. And I would point, Your Honor, to it's in 922A11, or I'm sorry, 921A11, 921A21C. These statutes get confusing. You're engaged in the business if you devote time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale. It's the purchase and resale, and it's the trade or business, that if your conduct is that, then you're engaged in dealing. If you're just a shop clerk, you're not engaged in a trade or business that your profit depends on the purchase and resale of firearms. That's just not what your conduct is. But a lot of this evidence is inferential, I think. I mean, for example, let's take Seward the chiropractor. I mean, an employee could say, yeah, I can get you a firearm. An employee could say that, but an employee wouldn't say, I am a dealer. Yeah, but might loosely, yeah, I deal in guns. I can get you a gun, you know. And, again, let me follow through for just a second. So if that's the case, if we really don't know what the line is between agent and employer, at least it's not clear now, why does the rule of lenity apply? I mean, because he has to be on notice that his conduct is illegal. Well, he's clearly on notice that his conduct is illegal. He was present at the interview with the ATF investigator who made crystal clear to Mr. King that if he was going to be involved in the business, he had to be on the license. He also actually got an email from ATF that made very clear to him that, like, if your consulting business rises to the level of dealing, you have to be licensed. So he knew full well that if his activities rose to that level, he had to be licensed. I guess my question was somewhat different. If we don't know what the level is, I mean, you said it rose to that level, but the level seems to be undefined in the statute. I mean, leaving aside this case, isn't that a gray area where the rule of lenity could apply? I'm not sure, Your Honor, because I think it's simple. Actually, I don't know. I mean, from listening to you today, I'm not sure I would know, you know, where that line would be if I were just an employee at a gun shop. Well, truthfully, the definition of engaged in the business was added in 1985 to answer Your Honor's questions because before that, that term was just not defined. And so Congress has attempted to provide a definition. I think they've done a fairly good job. I mean, the gist of it is, is that if your conduct is such that you're engaged in business, intending to profit from the purchase and resale. Again, purchase and resale. To me, that's key. The hobbyist isn't purchasing and reselling and trying to make a profit. Someone who's engaged in the business, he's acquiring inventory that he intends to turn around and resell. And the nature of the inventory in this case, that's why I think Your Honor's question is mainly factual for the jury. It's not a question of the rule of lenity. I think it's just a question of a factual one that the jury has to determine. And if Mr. King had bought one firearm, this would be a very different case. He bought 21 firearms and, again, multiple copies of the same firearm. That is just conduct that is not consistent with curating a personal collection. And the jury certainly could draw the inference that he was intending to resell them. If the Court has no further questions, does the Court have any questions on the materiality point? Because I think that the law is fairly settled on that. Mr. King lied about why he was coming into the country, and so that's material as a matter of law. Thank you, Your Honor. Thank you. Okay. Does the evidence show on those 18 occasions when he came across the border that he went either to the newly established factory or to his hideaway? It doesn't establish it on all 18. However, on the three counts that were charged, yes, the evidence shows that he came in in November. He went down to McMinnville, which was where their office was. The next day they found the McMinnville ATM receipt in his car. The May, March 10th entry, well, he went south. We don't know how far south, but we know that he came back the next day and rented the storage locker. And then on the 18th, that's when they surveilled him and followed him all the way down there. So, yes, for those three counts, there definitely was proof of that. Okay. Thank you. You have four seconds, but I'll give you a minute. Use it wisely. Thank you, Your Honor. That definition of 18 U.S.C. 921-821-C, engaged in the business, talks about repetitive purchase and resale for the objective of profit. And even the Seward testimony, the Seward event, there's no showing of repetitive business. The fact that King got the e-mail from ATF shows that he wanted to understand, he wanted to know so that his conduct would comply with the requirements of the law. That's really what the problem that the government has here. There was the whole issue of ammunition. That's a 922-A1B separate charge. You don't need a license for that. That was just not even a bad act. You don't need a license for the ammunition. Doesn't the amount of the ammunition, doesn't it have some relevance on the question of engaging in the business of dealing in firearms? It's not irrelevant, is it? The amount of ammunition that he purchased, does an enthusiast, a hobbyist, buy that kind of ammunition? Oh, I think so. In that amount? I think so. This is the West. No. Your Honor, it was $1,000 worth of three boxes, and certainly Mr. Denby in Vancouver wanted that amount of ammunition, just like Mr. King wanted to own 21 guns. They weren't all the same model Glock. They were different models Glocks. There were various Glocks, but they were different, and there's no evidence of sales. We appreciate the Court's indulgence, unless there's any other questions. Thank you, counsel. Thank you. Thank you both for your arguments. The case is heard and will be submitted for decision.
judges: Dearie, Thomas, Nguyen